780 A.2d 696 (2001)
In the Interest of C.C.
Appeal of C.C., Appellant.
Superior Court of Pennsylvania.
Submitted March 27, 2001.
Filed July 17, 2001.
*697 John Packel, Public Defender, Philadelphia, for appellant.
Catherine L. Marshall, Assistant District Attorney, Philadelphia, for Com., appellee.
BEFORE: STEVENS, MUSMANNO, and TAMILIA, JJ.
STEVENS, J.
¶ 1 Appellant, a juvenile, was adjudicated delinquent for possessing cocaine and was committed to the Vision Quest Program. In the within appeal, Appellant claims that the trial court erred in denying his motion to suppress the twenty-seven (27) packets of cocaine found in his clothing during a pat down search. We affirm.
¶ 2 On November 3, 1999, Officer Mark Wolf of the Philadelphia Narcotics Strike Force and his partner were patrolling a neighborhood known for drug trafficking when Officer Wolf noticed, from thirty feet away, Appellant displaying a clear plastic bag containing many blue packets to another male. When Appellant saw the officers, he quickly shoved the bag into his pants pocket. Based on his involvement in forty to sixty arrests for drug trafficking in the same location, Officer Wolf suspected Appellant's blue packets contained illegal drugs, so he approached Appellant, identified himself, and patted down Appellant for weapons. During the pat down, Officer Wolf retrieved the bag from Appellant's pocket and saw that it contained twenty-seven blue packets filled with a white powdery substance, which a field *698 test identified as cocaine. Eighty-two dollars were also recovered from Appellant's other pocket. Based on Officer Wolf's search, Appellant was arrested.
¶ 3 At his subsequent juvenile hearing, Appellant moved to suppress the evidence against him as the product of an illegal search. The trial judge denied the motion, adjudicated Appellant delinquent, and ordered that Appellant remain in the Vision Quest program, where he had been placed after his arrest. Appellant filed this timely appeal, in which he claims Officer Wolf possessed neither reasonable suspicion to justify the investigatory stop and the weapons pat down nor probable cause to support the seizure of the baggies from Appellant's pants pocket.
¶ 4 When reviewing rulings of a suppression court, we must determine whether the record supports that court's factual findings and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. Commonwealth v. Burnside, 425 Pa.Super. 425, 625 A.2d 678 (1993). In so doing, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Commonwealth v. Reddix, 355 Pa.Super. 514, 513 A.2d 1041 (1986). Where the record supports the findings of a suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. Commonwealth v. Evans, 546 Pa. 417, 685 A.2d 535 (1996).
¶ 5 Appellant first contends that Officer Wolf lacked reasonable suspicion to stop and frisk him. We disagree.
¶ 6 It is well established that the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution allow a police officer to conduct a brief investigatory stop of an individual if the officer has reasonable suspicion, based on specific and articulable facts, that criminal activity may be afoot. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Commonwealth v. Hall, 558 Pa. 16, 735 A.2d 654 (1999). An investigatory stop subjects a person to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Commonwealth v. Ellis, 541 Pa. 285, 662 A.2d 1043 (1995). Such an investigatory stop is justified only if the detaining officer can point to specific and articulable facts which, in conjunction with rational inferences derived from those facts, give rise to a reasonable suspicion of criminal activity and therefore warrant the intrusion. In the Interest of J.V., 762 A.2d 376 (Pa.Super.2000).
¶ 7 If, during the course of a valid investigatory stop, an officer observes conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons. Terry, supra; In the Interest of S.J., 551 Pa. 637, 713 A.2d 45 (1998). Such a frisk is permitted without a warrant on the basis of reasonable suspicion when necessary for the discovery of weapons which might be used to harm the officer or others nearby. Terry, supra. To assess whether a reasonable belief existed, consideration is given to the specific reasonable inferences that the officer can draw from the facts in the light of his experience, but no consideration is given to his unparticularized suspicions or hunches. Commonwealth v. Zhahir, 561 Pa. 545, 751 A.2d 1153 (2000).
¶ 8 It is clear that, under the totality of the circumstances in the within case, Officer Wolf reasonably suspected that criminal *699 activity was afoot. During the course of his patrol of a high crime area, where he had previously arrested numerous drug offenders, Officer Wolf saw Appellant showing a clear baggie holding many smaller blue baggies to another man. When Appellant noticed Officer Wolf watching him, he quickly hid the baggie in his pants pocket. Thus, Officer Wolf's experience coupled with the location and Appellant's behavior provided Officer Wolf with the requisite reasonable suspicion to conduct an investigatory stop. See Hall, supra. (holding that reasonable suspicion existed under similar facts).
¶ 9 Moreover, we find that Officer Wolf's decision to frisk Appellant for weapons was reasonable under the totality of the circumstances. The investigatory stop was of a suspected drug trafficker located in a high crime area, and Officer Wolf was entitled in such a setting to secure his personal safety and to prevent potential harm to others. See Hall, supra; In the Interest of B.C., 453 Pa.Super. 294, 683 A.2d 919 (1996) (holding that it was reasonable for an officer to believe that a drug dealer, selling in a high drug-trafficking area, was armed and dangerous).
¶ 10 Finding just cause to conduct both the investigatory stop and Terry frisk, we now consider whether Officer Wolf exceeded the permissible scope of the Terry frisk when he seized the drug packets from Appellant's pants pocket. Because we find that Officer Wolf acquired probable cause to arrest and search Appellant upon his initial touch of the concealed contraband in question, we conclude that the seizure occurred within the proper bounds of Terry.
¶ 11 Because its sole purpose is the protection of officers and others proximate to a detainee, a Terry search may not go beyond what is necessary to determine if the suspect is armed. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968). The fruits of a Terry search exceeding this scope will thus be suppressed. Id. However, in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the United States Supreme Court adopted the so-called "plain-feel" doctrine and held that a police officer may seize non-threatening contraband detected through the officer's sense of touch during a Terry frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is "immediately apparent" and the officer has a lawful right of access to the object.
¶ 12 In formally adopting the plain feel doctrine as a matter of Pennsylvania law, the Pennsylvania Supreme Court explained that the "immediately apparent" inquiry is essentially coextensive with a probable cause inquiry, "taking into account the totality of the circumstances surrounding the frisk, including, inter alia, the nature of the object, its location, the conduct of the suspect, the officer's experience, and the reason for the stop." Zhahir, 561 Pa. at 564, 751 A.2d at 1163. See also In the Interest of B.C., supra. (holding that a search of a juvenile's pocket was proper where officer identified concealed baggie as contraband during legitimate Terry frisk).
¶ 13 Here, the sum of the above-described circumstances, culminating with Officer Wolf's immediate tactile impression of the contraband during a legitimate Terry frisk, sufficed to establish probable cause to arrest and search Appellant. While ultimately formed upon touching the concealed baggie during the Terry frisk, N.T. 3/27/00 at 5, Officer Wolf's belief that the baggie contained cocaine was also the culmination of many other factors leading up to that point, including his considerable *700 experience in drug enforcement at the location in question, the location's unrebutted reputation for drug trafficking, the suggestive nature of the baggie, and Appellant's urgent attempt to conceal the baggie upon noticing Officer Wolf's presence. When processed by the senses of this trained officer, such a collection of facts created a reasonable inference that Appellant possessed contraband allowing for the warrantless arrest and search of Appellant.
¶ 14 Therefore, finding that Officer Wolf seized the contraband only after probable cause for the warrantless search had attached during a legitimate Terry frisk, we find that the search and seizure in question were proper. Thus, the trial court committed no error in denying Appellant's motion to suppress.
¶ 15 Accordingly, we affirm the Order entered below.
¶ 16 Affirmed.