651 A.2d 558

**COMMONWEALTH of Pennsylvania**

v.

**Thomas STACKFIELD, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 1994.

Filed Dec. 14, 1994.

Timothy L. Clawges, Carlisle, for appellant.

Alison Taylor, Asst. Dist. Atty., Carlisle, for Com., appellee.

Before ROWLEY, President Judge, and CIRILLO and DEL SOLE, JJ.

ROWLEY, President Judge:

Appellant Thomas Stackfield was convicted after a bench trial on May 20, 1993, of two counts of unlawful possession of a controlled substance, 35 P.S. § 780–113(a)(16)(A) and § 780–113(a)(31)(i) and (ii)(B), and sentenced to five (5) to ten (10) months incarceration. On appeal, appellant claims that the trial court erred in admitting evidence seized from his pockets pursuant to a search that he alleges exceeded the scope permissible under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in that the officer conducting the frisk of appellant admitted that he felt nothing resembling weapons in appellant's pockets.[1]

Appellant contends next that, as a matter of policy, admitting evidence seized in this fashion impermissibly creates a "plain feel" exception to the warrant requirement. We need not reach the question of whether Article I, Section 8 of the Pennsylvania Constitution would permit this exception to the warrant requirement, however, because we agree that the trial court erred in failing to suppress the evidence seized, and therefore we reverse.

1. At the hearing held on appellant's omnibus pre-trial motion, (hereinafter referred to by "H.T.") held May 20, 1993, the officer conducting the search of appellant testified:

Q: Now, you are not telling this court that when you conducted the search of Mr. Stackfield and patted him down from the outside that you believed that what you were feeling was any sort of weapon?
A: That's correct. I didn't feel any weapons on him, no.
H.T., 5/20/93, at 26.

■ The standard and scope of appellate review of a trial court's denial of a motion to suppress is well established: we consider whether the record supports the suppression court's factual findings, and the legal conclusions drawn therefrom, by reviewing the prosecution's evidence and only so much of the defense's evidence as remains uncontradicted within the context of the record as a whole. *Commonwealth v. Brundidge*, 533 Pa. 167, 170, 620 A.2d 1115, 1116 (1993); *Commonwealth v. Burnside*, 425 Pa.Super. 425, 625 A.2d 678 (1993). Factual findings unsupported by the evidence may be rejected, *Burnside*, 425 Pa.Super. at 429, 625 A.2d at 680; *Commonwealth v. Marconi*, 408 Pa.Super. 601, 597 A.2d 616 (1991), *appeal denied*, 531 Pa. 638, 611 A.2d 711 (1992), but if the record supports the suppression court's factual findings, reversal of a suppression court's actions is justified only if the inferences and legal conclusions drawn therefrom are erroneous, *Commonwealth v. Fromal*, 392 Pa.Super. 100, 111–112, 572 A.2d 711, 717 (1990), *appeal denied*, 527 Pa. 629, 592 A.2d 1297 (1990).

We find the trial court's findings of fact, as evidenced in its Opinion and Order, dated September 3, 1993, to be supported by the record and sufficient to justify appellant's initial detention and subsequent pat-down. However, we find a significant factual finding made by the trial court to be unsupported by the record; the legal conclusion drawn therefrom is therefore erroneous.

The facts, as found by the trial court and supported by the record, are as follows. On May 29, 1992, members of the Carlisle Police force and the state Attorney General's Office, Bureau of Narcotics, executed a search warrant issued for 111 North Hanover Street, Carlisle.[2] The officers banged on the apartment door, announced that they were policemen and had a search warrant, waited thirty seconds, and, after hearing

2. The search warrant and affidavit identified the following items, inter alia, to be searched for and seized: "Cocaine (Schedule II), any item used to package, process, prepare, manufacture, store, or distribute Cocaine, and any items used to inhale, ingest, or inject Cocaine ... And any other controlled substances." Search Warrant and Affidavit, May 29, 1992.

scurrying noises from within the apartment, proceeded to break down the door to the premises. One of the officers encountered appellant in the kitchen area and told him to get down on the floor; when appellant failed to obey, the officer "assisted him to the ground." H.T., May 20, 1993, at 22. The officer then handcuffed appellant's hands behind his back "to secure him while the residence was being secured." *Id.* at 24.[3] After appellant was secured, the officer conducted a protective pat-down search of appellant's body, rolling him over on the ground to search front and back, patting down appellant's pockets in the process. The officer testified that:

> A: When I had patted down his pockets I had felt some—what I knew was packaging material or zip-lock baggies, what it felt like from my experience from working drugs. I subsequently did reach in and pulled out numerous zip-lock baggies that had been in his pants pockets. I believe front and back. Some of them had marijuana. And the other one had suspected cocaine residue.

*Id.* at 25.

The contents of two of the zip-lock baggies field-tested positive for marijuana. The contents of the remaining baggies were not field tested "due to the small amount of the residue." Affidavit of Probable Cause, June 8, 1992. The officer further testified:

> BY THE COURT: There is almost nothing perceptible in them. Was there at least a whitish color to them or something . .
>
> A: Yes. There was a small piece of substance in some of them.

N.T., May 20, 1993, at 40. Appellant was released and subsequently arrested more than a week later, on June 8, 1992.

---

**3.** Bureau of Narcotics Agent James D. Tillman testified that "once they were put on the floor they are detained there and patted down to insure that they don't have weapons on their person[s]." H.T. at 14.

It is well settled that the police may properly detain persons found on the premises during execution of a search warrant, in order to minimize the possibility of harm to officers and prevent concealment or destruction of evidence. *Commonwealth v. Markovitch*, 388 Pa.Super. 244, 250, 565 A.2d 468, 471 (1989). Appellant was present on premises that were the subject of a properly issued search warrant, and he does not challenge his detention in this regard. When the officers securing the premises ordered appellant to fall to the floor, he failed to comply, with the result that he was subsequently placed on the floor, handcuffed by one of the officers, and subjected to a protective frisk for weapons. Appellant does not challenge the officer's actions in conducting the pat-down, or frisk, of his person, nor would he prevail if he did. It is beyond question that a police officer has a narrowly drawn authority to conduct a reasonable search for weapons, or a protective pat-down, where, as here, the officer reasonably believes that criminal activity is afoot, *Commonwealth v. Canning*, 402 Pa.Super. 438, 440, 587 A.2d 330, 331 (1991), and that the suspect may be armed and dangerous, *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883. Because the officer found, or felt, nothing resembling a weapon in the course of the protective pat-down, however, appellant claims that the officer was not permitted to search through appellant's pockets and seize what was found therein. For the following reasons, we agree.

Subject to certain exceptions, warrantless searches are presumed unreasonable. *Commonwealth v. Lindsay*, 406 Pa.Super. 638, 643, 595 A.2d 86, 88 (1991), *appeal denied*, 529 Pa. 647, 602 A.2d 857 (1991). The authority to conduct a warrantless stop and frisk under the rationale of *Terry* is one such exception. Seizure of contraband viewed by police officers from a lawful vantage point is another such exception, under the so-called "plain view" doctrine. *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *see also In the Interest of S.D.*, 429 Pa.Super. 576, 582–583, 633 A.2d 172, 175 (1993). An additional exception to the warrant requirement was recently carved out by the United States Supreme Court in *Minnesota v. Dickerson*, — U.S. —, 113

S.Ct. 2130, 124 L.Ed.2d 334 (1993), in which the Court determined that police may seize non-threatening contraband detected, by touch, during a protective pat-down search, so long as the official search stays within the bounds permitted by *Terry*. *Dickerson*, — U.S. at —, 113 S.Ct. at 2136. The Court analogized that where a "plain feel," in the course of a lawful pat-down, reveals an "object whose contour or mass makes its identity immediately apparent," a subsequent warrantless seizure is justified. *Id.*, — U.S. at —, 113 S.Ct. at 2137. The Court reasoned that whether the identification of contraband occurs by virtue of an officer's sight or feel, the probable cause required by the Fourth Amendment as a prerequisite to seizure will nonetheless prevent "excessively speculative seizures." *Id.*

Since the Supreme Court's decision in *Dickerson*, this Court has had two occasions to decide the propriety of a seizure of contraband resulting from a trained officer's feeling an object during an otherwise lawful search. In *Commonwealth v. Johnson*, 429 Pa.Super. 158, 631 A.2d 1335 (1993), a warrantless seizure of contraband hidden in the suspect's crotch was upheld because the "contour or mass" made itself immediately apparent to the officer conducting an otherwise lawful *Terry* search. Probable cause to conduct a more intrusive search than would otherwise be permissible under *Terry* arose when the officer felt a crunchy, anatomically unexpected mass in the suspect's crotch. *Johnson*, 429 Pa.Super. at 168, 631 A.2d at 1340.

On the other hand, under the facts presented in *S.D., supra,* this Court reversed the trial court's denial of a juvenile suspect's motion to suppress, finding that while police officers had reasonable suspicion to stop and frisk the juvenile suspect under *Terry*, there was insufficient evidence to sustain a more intrusive search into the defendant's pocket to seize fifty vials of cocaine, which the officer could feel during the pat-down. *S.D.*, 429 Pa.Super. at 584–585, 633 A.2d at 176. This Court determined that the record failed to substantiate what the officer thought he felt on conducting the pat-down; in the absence of testimony that the officer felt a possible weapon or

that he "recognized the vials as contraband," the facts did not justify the intrusion into the defendant's pockets. *Id.*, 429 Pa.Super. at 585, 633 A.2d at 177. The search, therefore, exceeded the scope permissible under *Terry* and consequently violated the defendant's constitutional rights. *Id.* Moreover, this Court, in reaching the foregoing conclusion, reaffirmed that "[u]nder the law of this Commonwealth, a more intrusive search of a suspect's person following a protective pat-down search would only be justified under a *Terry* analysis where the officer reasonably believed he had felt what appeared to be a weapon." *Id.*, 429 Pa.Super. at 582, 633 A.2d at 175.

■ Under the facts presented in appellant's case, the Commonwealth maintains that the initial detention, subsequent handcuffing, and pat-down of appellant is justified under *Terry*, as the officer involved had a reasonable suspicion that appellant could be armed and dangerous. We agree. Moreover, the Commonwealth argues, the subsequent search into appellant's pockets and resulting seizure of the contents in this case were supported by probable cause, which arose when the officer conducting the patdown "felt what he knew was packaging material or zip-lock baggies from his experience working drugs." Appellee Brief at 11.

■ We find the record does not support the factual conclusion that the officer felt an item that he immediately recognized as contraband, as the Commonwealth and the trial court maintain. A zip-lock baggie is not per se contraband, although material contained in a zip-lock baggie may well be. A close reading of the record in appellant's case does not support a factual finding that the officer conducting the *Terry* patdown recognized a "contour or mass [that] ma[de] its identity immediately apparent[.]" *Dickerson*, —— U.S. at ——, 113 S.Ct. at 1237; *Johnson*, 429 Pa.Super. at 166, 631 A.2d at 1339. The record supports a factual finding that the officer felt a mass that he recognized as a baggie; it does not support a factual finding that the officer felt what he immediately recognized as contraband. Sight unseen, the contents of the baggies that the officer felt in appellant's pants pockets could

as easily have contained the remains of appellant's lunch as contraband. The record discloses that it was only after the officer reached in and seized the baggies from appellant's pockets that the contents in two of the baggies were identified, by sight, as a green, leafy material that subsequently field-tested positive for marijuana. Moreover, the residue found in the remaining baggies was not of sufficient quantity to field-test, and the officer did not provide the trial court with an indication of what he thought those baggies contained, as disclosed through the exercise of his tactile sense, prior to reaching into appellant's pockets. H.T. at 25. *See S.D.*, 429 Pa.Super. at 585, 633 A.2d at 176.

■ Because the record does not support the trial court's factual finding that the officer knew by feel what was in the baggies that were in appellant's pockets, the legal conclusion that sufficient probable cause existed to justify a more intrusive search is error. Under the circumstances of appellant's case, probable cause may arise from those factors, as seen through the eyes of a trained police officer, that would give rise to a reasonable belief that a criminal offense has been or is being committed. *Lindsay*, 406 Pa.Super. at 643–644, 595 A.2d at 88. More specifically, the facts available to the officer conducting the search of appellant's pockets must have been such that he could reasonably believe that the items he felt may have been contraband. *Commonwealth v. Hoffman*, 403 Pa.Super. 530, 543, 589 A.2d 737, 744 (1991), *appeal denied*, 530 Pa. 652, 608 A.2d 28 (1992).

■ This Court's determination that sufficient probable cause existed to conduct a warrantless search under the facts presented by *Lindsay, supra*, does not support the Commonwealth's contention with respect to appellant. Although, as here, the defendant in *Lindsay* was present on premises subject to a valid search warrant, the defendant in *Lindsay* was observed by police officers in the act of actively attempting to conceal evidence, which act is, in itself, a crime. *Lindsay*, 406 Pa.Super. at 644, 595 A.2d at 89. Here, appellant was subdued, placed on the floor and his hands handcuffed behind

his back. Absent the officer's feeling what he reasonably believed to be a weapon, and absent facts in the record to support the officer's contention that what he was feeling was contraband, probable cause to conduct the more intrusive search through appellant's pockets did not arise. Rather, the search exceeded the scope of a *Terry* frisk and patdown, and the evidence seized should have been suppressed.

The above disposition with respect to appellant's first claim makes it unnecessary for us to reach the constitutional issue of whether the Supreme Court's decision in *Dickerson* is applicable under the Pennsylvania Constitution. *Commonwealth v. Mason,* 483 Pa. 409, 411, 397 A.2d 408, 410 (1979); *Commonwealth v. Kennedy,* 413 Pa.Super. 95, 604 A.2d 1036 (1992), *appeal denied,* 531 Pa. 638, 611 A.2d 711 (1992); *see also S.D.,* 429 Pa.Super. at 584, 633 A.2d at 176.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.